AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>**INFORMATION ASSOCIATED WITH TWO**<br>**FACEBOOK ACCOUNTS** | )<br>)<br>)   Case No.   **MJ20-5109**<br>)<br>) |

FILED _____ LODGED<br>_____ RECEIVED

**May 11, 2020**

CLERK U.S. DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON AT TACOMA<br>BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated herein by reference.

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC § 1073 | Unlawful Flight to Avoid Prosecution |

The application is based on these facts:

See Affidavit of FBI Special Agent Terrance G. Postma, attached hereto and incorporated by reference herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Terrance G. Postma, Special Agent
*Printed name and title*

Sworn to before me and signed by electronic means, reliable under Fed. R. Crim. Pro. 41(d).

Date: _____ 05/11/2020 _____

*Judge's signature*

City and state: Tacoma, Washington

Hon. David W. Christel, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

STATE OF WASHINGTON     )

                        )     ss

COUNTY OF PIERCE        )

I, Terrance G. Postma, being first duly sworn, hereby depose and state as follows:

## BACKGROUND

1.      I have been employed as a Special Agent of the FBI since June 2002 and am currently assigned to the Seattle Division's Tacoma Resident Agency.  I am responsible for investigations of violent crime, fugitives, and bank robbery.  As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to search the information described in Attachment A for the purpose of locating and apprehending Santiago Mederos who has a federal arrest warrant issued in the Western District of Washington for a charge of Unlawful Flight to Avoid Prosecution, Title 18, United States Code, Sections 1073 (MJ16-5179) arising from his flight from the Western District of Washington to avoid charges of murder, as described below.  There is also probable cause to search the information described in Attachment A for evidence in the fugitive investigation, as described in Attachment B.

## PURPOSE OF AFFIDAVIT

4.      I make this affidavit in support of an application for a search warrant for information associated with the following Facebook account(s) and/or telephone numbers ("Subject Account(s)"):

AFFIDAVIT OF TERRANCE POSTMA – 1
USAO #2016R01184

1          (1)          Telephone number +52-7227181990/+52-17227181990 (Subject

2     Account 1), and

3          (2)          Facebook account 100043438482855, registered under the username

4     Omar Ceron (Subject Account 2).

5          5.          All of the requested information is stored at premises owned, maintained,

6     controlled, or operated by Facebook, a social networking company headquartered in

7     Menlo Park, California.  The information to be searched is described in the following

8     paragraphs and in Attachment A.  This affidavit is made in support of an application for a

9     search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require

10    Facebook to disclose to the government records and other information in its possession,

11    pertaining to the subscriber or customer associated with Subject Accounts.

12                              **PRIOR APPLICATIONS**

13         6.          This is the first application for the Subject Accounts.

14                              **SUMMARY OF PROBABLE CAUSE**

15         7.          In 2010, Santiago Mederos fled from Tacoma to Mexico after the murder

16    of Camille Love and Jose Lucas.  Santiago Mederos has outstanding warrants for the

17    respective murders, and this Court has charged him for violation of Unlawful Flight to

18    Avoid Prosecution, Title 18, United States Code, Sections 1073 on September 30, 2016

19    under Case No. MJ16-5179.

20         8.          Investigation by law enforcement has led to the discovery of a Facebook

21    account that Santiago Mederos may be using under an alias.  The Subject Accounts are

22    associated with that Facebook account.

23                              **STATEMENT OF PROBABLE CAUSE**

24    **A. SANTIAGO MEDEROS AND THE LOVE AND LUCAS MURDERS**

25         9.          On February 7, 2010, Tacoma Police Department (TPD) officers

26    responded to the 5900 block of Portland Avenue regarding a shooting.  At the scene, TPD

27    officers and detectives discovered that Camile Love was the shooting victim.  Love died

28    from the injuries sustained in the shooting.  Based on interviews of witnesses and

AFFIDAVIT OF TERRANCE POSTMA – 2
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  informants who admitted to participation in the shooting, the TPD detectives concluded
2  that Santiago Mederos was the prime suspect in Love's murder and that the shooting was
3  a result of a gang turf war.

4          10.      On March 25, 2010, a homicide occurred within the city of Tacoma.  TPD
5  detectives identified the homicide victim as Jose Saul Lucas and identified the prime
6  suspect in his murder as Santiago Mederos.  Based on interviews of two witnesses, TPD
7  detectives concluded that Santiago Mederos, a known member of the Eastside Lokotes
8  Sureños (ELS) gang, and four other ELS gang members went to the residence of a rival
9  gang member, Reynaldo Orozco, to collect money.  When they could not find the rival
10  gang member, they broke into and damaged Orozco's car, which was parked at the
11  residence.  When three individuals, who lived with Orozco, realized that the ELS gang
12  members were vandalizing Orozco's vehicle, they confronted the gang members and a
13  fight ensued.  While attempting to flee the scene, Santiago Mederos and his accomplices
14  fired a single gunshot, which struck and killed one of Orozco's roommates, Jose Saul
15  Lucas.

16          11.      As a result of their initial investigation, TPD detectives obtained an arrest
17  warrant for Santiago Mederos for his involvement in the homicide.  Further investigation,
18  to include interviews with witnesses, friends and family members, revealed that Santiago
19  Mederos is aware that he has a warrant for his arrest and has subsequently gone into
20  hiding.

21          12.      Ashley Rios, a friend of Santiago Mederos, stated in an interview with
22  TPD detectives that she travelled to Mexico with Santiago Mederos to his Aunt's
23  residence in Guerrero, Mexico, shortly after the Lucas murder.

24          13.      Efforts to date to locate Santiago Mederos in Mexico have been
25  unsuccessful.

26

27

28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## B. SUBJECT ACCOUNT

14.     As described below, law enforcement has identified a Facebook account that Santiago Mederos may be using under an alias.  The Subject Accounts are associated with that Facebook account.

### Background on Facebook Accounts of Mederos under Alias

15.     As explained in more detail below, law enforcement located a Mexican phone number, +52-7341170819, which has been used to contact Mederos family members and has been used for a WhatsApp account with a profile picture of Santiago Mederos.  That same number is associated with a Facebook Account 100040501718452, registered under the username Antono Mendoza.  The account ending in 8452 has shared "machine cookies" with Facebook Account 100036795438133, under the username Antony Villa.  As explained below, a machine cookie identifies the particular machine (phone, computer, or tablet) used to access an account, and a shared cookie indicates that two accounts were accessed on the same machine, which means the users are the same person or someone in close proximity to the other user.  Thus, law enforcement have concluded that the two Facebook accounts belong to Santiago Mederos.

16.     In the course of this investigation, law enforcement has reviewed telephone records of members of the Mederos family and records of telephone numbers that are in communication with members of the Mederos family.  In the course of reviewing those records, law enforcement identified a number, +52-7341170819.  According to call records, the number ending in 0819 is in communication with individuals who are close to the Mederos family.

17.     An online search of publicly available information indicate that the user of the number ending in 0819 has a WhatsApp account under the same telephone number.  The WhatsApp account included a public profile picture of an individual who resembles Santiago Mederos and an unknown adult female who resembles Claudia Perez, and an unknown juvenile female.  Law enforcement has reviewed the WhatsApp profile picture associated with the number ending in 0819 and observed that the male individual

AFFIDAVIT OF TERRANCE POSTMA – 4
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

in the WhatsApp profile picture has a tattoo on the right side of his neck and on his right shoulder.  These tattoos and the appearance of the individual's face match a photograph of Santiago Mederos that law enforcement obtained from a prior Facebook search warrant return in this investigation.

18.     Based on review of records returned to investigators by Facebook, Inc. pursuant to a search warrant issued by this Court, the user of the number ending in 0819 also has a Facebook account registered under the same number ending in 0819, Facebook Account 100040501718452, registered under the username "Antono Mendoza."  The user of the Facebook account responded to a text sent to the Mexican phone number +52-7341170819 on August 10, 2019.  The date of birth provided by the account holder of the "Antono Mendoza" Facebook account is June 5, 1990.  The birthdate of Santiago Mederos is June 5, 1991.  Prior search warrant returns indicate that variations of the name "Antonio," like "Antono," are common aliases for Santiago Mederos.

19.     Based on review of records returned to investigators by Facebook, Inc. pursuant to a search warrant issued by this Court, the username of Facebook Account 100036795438133 is "Antony Villa" who lives in Tenancingo, Mexico.  Facebook records returned to investigators pursuant to prior orders and warrants of this Court revealed that the username for two other Facebook accounts known to have been previously used by Santiago Mederos are "Anthony Villa" and "Antonio Villa," which is based on Mederos's other family name, Villalba.

20.     Based on review of records returned to investigators by Facebook, Inc. pursuant to a search warrant issued by this Court, Facebook Account 100040501718452 and Facebook Account 100036795438133 are linked by machine cookie, which means that two particular accounts have been accessed by the same individual machine (e.g., two Facebook accounts that have been accessed on the same phone).  Such a "link" between two accounts indicates that the users are the same person or in close proximity to each other.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

**Background on Claudia Perez**

2      21.    Based on review of records returned to investigators by Facebook, Inc.

3  pursuant to a search warrant issued by this Court, the user of the Facebook account

4  100036795438133 sent a message to the user of Facebook account 100045392260014,

5  with the username "Claudia Perez" on January 27, 2020.  The message when roughly

6  translated says "Rest and sweet dreams, my love.  I confess that I'm crazy in love with

7  you but I recognize that it makes no sense if you don't feel the same.  I love you, baby.

8  See you tomorrow."

9      22.    The user of the Facebook account 100036795438133 also sent a message

10  to the user of Facebook account 100045392260014 on January 30, 2020.   The message

11  when roughly translated says "Hello my love.  God willing, everything will be fine, my

12  queen.  Cheer up, baby.  I love you all, for real.  I want to apologize to you from the

13  bottom of my heart for how I am with you.  I know we barely talk anymore.  As you will

14  say, it's not possible because they are just looking after [us].  Never doubt that I love you

15  and our four babies.  You are my whole world.  I love you, you are the most beautiful and

16  perfect thing that God has given me."

17

**Facebook Account Ending in 3705**

18      23.    As described in more detail below, law enforcement have identified a

19  Facebook account ending in 3705, which probably belongs to Santiago Mederos based on

20  content posted to the account involving Claudia Perez.

21      24.    Based on review of records returned to investigators by Facebook, Inc.

22  pursuant to a search warrant issued by this Court Facebook account 100030779393705

23  with the username "Yadiel Garcia" and the Facebook user with the username

24  "Maricarmen Olvera" engaged in a conversation on February 13, 2020.  During the

25  conversation the user of Facebook account 100030779393705 roughly states, "You know

26  I love you but you better take care of our baby and never tell her about me, take care of

27

28

AFFIDAVIT OF TERRANCE POSTMA – 6
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  her Claudia."[1]  During the conversation, the user of Facebook account 100030779393705

2  continues to refer to a baby and how difficult it is to be apart from the baby.  The user of

3  the Facebook account with the username "Maricarmen Olvera" and the user of Facebook

4  account 100030779393705 agree to meet on Sunday in "the garden."

5       25.      Based on review of records returned to investigators by Facebook, Inc.

6  pursuant to a search warrant issued by this Court a profile picture posted to Facebook

7  account 100030779393705 on February 12, 2020 is the same photo posted to Facebook

8  account 100045392260014, as described earlier, and depicts Claudia Perez.  The user of

9  Facebook account 100030779393705 posted a comment with the profile picture that

10 states "te amo mi nina y mucho" which roughly translated states "I love you a lot my

11 girl."

12      26.      Based on review of records returned to investigators by Facebook, Inc.

13 pursuant to a search warrant issued by this Court another picture posted to Facebook

14 account 100030779393705 on February 12, 2020, depicts an infant girl with the comment

15 "no podre estar con tigo me bb pero siempre pienso en ti dia adia no che tras noche"

16 which roughly translated states "I may not be able to be with you, baby, but I think about

17 you day after day and night after night."

18      27.      Based on review of records returned to investigators by Facebook, Inc.

19 pursuant to a search warrant issued by this Court a profile photo posted to Facebook

20 account 100030779393705 on February 5, 2020, depicts what appears to be the same

21 infant baby girl.  The user of Facebook account 100030779393705 posted a comment

22 with this profile picture that states "te amo mi bebita preciosa" which roughly translated

23 states "I love you my precious baby."

24

25

26

27 _____

28 [1] The original message is in Spanish, and I have used a translation service to translate the message into English in this Affidavit.

AFFIDAVIT OF TERRANCE POSTMA – 7
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**Subject Accounts 1 and 2**

28.      A confidential human source is in communication with the user of Facebook account 100030779393705, believed to be Santiago Mederos.  The user of Facebook account 100030779393705 has recently instructed the confidential human source to contact them at telephone number +52-729.138.2091 and at Subject Account 1. The confidential human source has been in contact with the individual that provided those numbers at the given numbers.

29.      Based on open source research there is a Snapchat account associated with telephone number +52-729.138.2091, and the Snapchat account has a display name of "Omar Ceron."  There is also a WhatsApp account with a profile picture of an unknown male.

30.      Based on review of pen register trap and trace activity provided to investigators pursuant to an order of this Court, Facebook account 100030779393705 is in communication with Subject Account 2, with the same username of the Snapchat described above, "Omar Ceron."

31.      Investigators have reviewed information available to any Facebook user and observed that the individual depicted in a profile picture posted to Subject Account 2 appears to be the same individual in the WhatsApp profile photo for the telephone number +52-729.138.2091.

32.      On May 6, 2020, investigators logged into the Facebook Law Enforcement Online Request portal to determine whether Facebook accounts exist for the Subject Accounts.  Investigators accessed the "Make a Preservation Request" section in the portal and entered Subject Account 1.  The Facebook Law Enforcement Online Request portal accepted the request, indicating that there is a Facebook account associated with Subject Account 1.

## C. FACEBOOK INFORMATION STORAGE

33.      I am aware from my experience and training, and consultation with other investigators, of the following information about Facebook:

AFFIDAVIT OF TERRANCE POSTMA – 8
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

34.       Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the public.

35.       Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

36.       I know from speaking with other law enforcement that "cookies" are small files placed by a server (such as those used by Facebook) on a device to track the user and potentially verify a user's authentication status across multiple sites or webpages.  This cookie could be unique to a particular account (e.g., the Facebook account) or to a given device (e.g., the particular phone used to access the Facebook account). The next time a user visits a particular site or server, the server will ask for certain cookies to see if the server has interacted with that user before.  Cookies can also be used to determine "machine cookie overlap," or multiple accounts that have been accessed by the same individual machine (e.g., two Facebook accounts that have been accessed on the same phone).  The machine cookie overlap thus allows Facebook to track accounts that are "linked" to each other because the same user account (username on a computer) on the same device accessed multiple Facebook accounts.  This can identify either multiple Facebook accounts used by the same person or used by different people sharing the same user account and device.  In either case, the machine cookie overlap means that the users of the linked accounts are the same person or two people in close proximity to each other.

AFFIDAVIT OF TERRANCE POSTMA – 9
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

37.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

38.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

39.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

AFFIDAVIT OF TERRANCE POSTMA – 10
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    40.    Facebook allows users to upload photos and videos.  It also provides users

2  the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is

3  tagged in a photo or video, he or she receives a notification of the tag and a link to see the

4  photo or video.  For Facebook's purposes, the photos and videos associated with a user's

5  account will include all photos and videos uploaded by that user that have not been

6  deleted, as well as all photos and videos uploaded by any user that have that user tagged

7  in them.

8    41.    Facebook users can exchange private messages on Facebook with other

9  users.  These messages, which are similar to e-mail messages, are sent to the recipient's

10  "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well

11  as other information.  Facebook users can also post comments on the Facebook profiles

12  of other users or on their own profiles; such comments are typically associated with a

13  specific posting or item on the profile.  In addition, Facebook has a Chat feature that

14  allows users to send and receive instant messages through Facebook.  These chat

15  communications are stored in the chat history for the account.  Facebook also has a Video

16  Calling feature, and although Facebook does not record the calls themselves, it does keep

17  records of the date of each call.

18    42.    If a Facebook user does not want to interact with another user on

19  Facebook, the first user can "block" the second user from seeing his or her account.

20    43.    Facebook has a "like" feature that allows users to give positive feedback

21  or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as

22  well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook

23  users can also become "fans" of particular Facebook pages.

24    44.    Facebook has a search function that enables its users to search Facebook

25  for keywords, usernames, or pages, among other things.

26    45.    Each Facebook account has an activity log, which is a list of the user's

27  posts and other Facebook activities from the inception of the account to the present.  The

28  activity log includes stories and photos that the user has been tagged in, as well as

AFFIDAVIT OF TERRANCE POSTMA – 11
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  connections made through the account, such as "liking" a Facebook page or adding

2  someone as a friend.  The activity log is visible to the user but cannot be viewed by

3  people who visit the user's Facebook page.

4       46.     Facebook Notes is a blogging feature available to Facebook users, and it

5  enables users to write and post notes or personal web logs ("blogs"), or to import their

6  blogs from other services, such as Xanga, LiveJournal, and Blogger.

7       47.     The Facebook Gifts feature allows users to send virtual "gifts" to their

8  friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase,

9  and a personalized message can be attached to each gift.  Facebook users can also send

10  each other "pokes," which are free and simply result in a notification to the recipient that

11  he or she has been "poked" by the sender.

12       48.     Facebook also has a Marketplace feature, which allows users to post free

13  classified ads.  Users can post items for sale, housing, jobs, and other items on the

14  Marketplace.

15       49.     In addition to the applications described above, Facebook also provides

16  its users with access to thousands of other applications on the Facebook platform.  When

17  a Facebook user accesses or uses one of these applications, an update about that the

18  user's access or use of that application may appear on the user's profile page.

19       50.     Some Facebook pages are affiliated with groups of users, rather than one

20  individual user.  Membership in the group is monitored and regulated by the

21  administrator or head of the group, who can invite new members and reject or accept

22  requests by users to enter.  Facebook can identify all users who are currently registered to

23  a particular group and can identify the administrator and/or creator of the group.

24  Facebook uses the term "Group Contact Info" to describe the contact information for the

25  group's creator and/or administrator, as well as a PDF of the current status of the group

26  profile page.

27       51.     Facebook uses the term "Neoprint" to describe an expanded view of a

28  given user profile.  The "Neoprint" for a given user can include the following information

AFFIDAVIT OF TERRANCE POSTMA – 12
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   from the user's profile:  profile contact information; News Feed information; status
2   updates; links to videos, photographs, articles, and other items; Notes; Wall postings;
3   friend lists, including the friends' Facebook user identification numbers; groups and
4   networks of which the user is a member, including the groups' Facebook group
5   identification numbers; future and past event postings; rejected "Friend" requests;
6   comments; gifts; pokes; tags; and information about the user's access and use of
7   Facebook applications.

8       52.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or
9   IP address.  These logs may contain information about the actions taken by the user ID or
10   IP address on Facebook, including information about the type of action, the date and time
11   of the action, and the user ID and IP address associated with the action.  For example, if a
12   user views a Facebook profile, that user's IP log would reflect the fact that the user
13   viewed the profile, and would show when and from what IP address the user did so.

14       53.    Social networking providers like Facebook typically retain additional
15   information about their users' accounts, such as information about the length of service
16   (including start date), the types of service utilized, and the means and source of any
17   payments associated with the service (including any credit card or bank account number).
18   In some cases, Facebook users may communicate directly with Facebook about issues
19   relating to their accounts, such as technical problems, billing inquiries, or complaints
20   from other users.  Social networking providers like Facebook typically retain records
21   about such communications, including records of contacts between the user and the
22   provider's support services, as well as records of any actions taken by the provider or
23   user as a result of the communications.

24       54.    Therefore, the computers of Facebook are likely to contain all the material
25   described above, including stored electronic communications and information concerning
26   subscribers and their use of Facebook, such as account access information, transaction
27   information, and other account information.  I believe such information is likely to help
28   me locate the fugitive described in this affidavit.

AFFIDAVIT OF TERRANCE POSTMA – 13
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

55.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

56.     As indicated in the Motion for Nondisclosure and Motion to Seal that accompany this affidavit, the government requests, pursuant to the preclusion of notice provisions of Title 18, United States Code, Section 2705(b), that Facebook be ordered not to notify any person (including the subscriber or customer to which the materials relate) of the existence of this warrant for such period as the Court deems appropriate.  The government submits that such an order is justified because notification of the existence of this Order would seriously jeopardize the ongoing investigation.  Such a disclosure would give the subscriber an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee or continue his flight from prosecution.

57.     It is further respectfully requested that this Court issue an order sealing all papers submitted in support of this application, including the application and search warrant until such dates as provided in the proposed Order.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

//

//

//

AFFIDAVIT OF TERRANCE POSTMA – 14
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## CONCLUSION

58.     Based on the forgoing, I request that the Court issue the proposed search warrant.  This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. *See* 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of these warrants.  Accordingly, by this Affidavit and Search Warrant, I seek authority for the government to search all of the items specified in Section I, Attachment B (attached hereto and incorporated by reference herein) to the Warrant, and specifically to seize all of the data, documents and records that are identified in Section II to that same Attachment.


TERRANCE G. POSTMA
Special Agent
Federal Bureau of Investigation


The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on this 11ᵗʰ day of May, 2020.


HON. DAVID W. CHRISTEL
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following accounts, each identified by Facebook user ID ("Subject Accounts"):

    (1)      Facebook account 100043438482855, registered under the username Omar Ceron, and

    (2)      Telephone number +52-7227181990/+52-17227181990,

for all such information that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

ATTACHMENT A
PROPERTY TO BE SEARCHED
USAO #2016R01184

– 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

    A.  The following information about the customers or subscribers of the Subject Accounts:

        (a)  User Neoprint - all user contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers associated with the current profile information, and all wall postings and messages to and from the user.

        (b)  All activity logs for the Subject Accounts and all other documents showing the user's posts and other Facebook activities;

        (c)  User photoprint and videos - all photos and videos uploaded, "liked", or tagged by the user, along with all photos uploaded by any user which have the user tagged in them, any associated photos or links to photos in their original format, including all original meta-data or "EXIF" information;

ATTACHMENT B
INFORMATION TO BE DISCLOSED                – 1 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

(d)   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend and family lists, including the friend and family Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)   All other records of communications and messages made or received by the user, including all private messages, chat history, calling history, and pending "Friend" requests;

(f)   All "check ins" and other location information;

(g)   I.P. Logs - all IP logs showing log-in and log-off and intraconnection I.P. activity including I.P. addresses and date/time stamps for account accesses as well as account creation I.P. address, date, and time.  Provide source port information for each I.P. log-in and log-off event for the Subject Accounts;

(h)   All records of the Subject Accounts' usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)   All information about the Facebook pages that each Subject Account is or was a "fan" of;

(j)   User Friends List/Information – provide a full list of all past and present friends for the Subject Accounts, including all messages and postings between accounts and listed friends;

(k)   All records of Facebook searches performed by the Subject Accounts;

(l)   All information about the user's access and use of Facebook Marketplace;

(m)   The types of service utilized by the user;

(n)   The length of service (including start date);

ATTACHMENT B
INFORMATION TO BE DISCLOSED         – 2 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    (o)    The means and source of payment for such service (including any credit
2               card or bank account number) and billing records;

3    (p)    All privacy settings and other account settings, including privacy settings
4               for individual Facebook posts and activities, and all records showing which
5               Facebook users have been blocked by the Subject Accounts;

6    (q)    All records pertaining to communications between Facebook and any
7               person regarding the user or the user's Facebook account, including
8               contacts with support services and records of actions taken;

9    (r)    Names (including subscriber names, Facebook user IDs, and screen
10             names);

11    (s)    Addresses (including mailing addresses, residential addresses, business
12             addresses, and e-mail addresses);

13    (t)    Local and long distance telephone connection records;

14    (u)    Push Tokens - any unique identifiers that would assist in identifying the
15             device(s) associated with the Subject Accounts, including push notification
16             tokens associated with the Subject Accounts (including Apple Push
17             Notification (APN), Google Cloud Messaging (GCM), Microsoft Push
18             Notification Service (MPNS), Windows Push Notification Service (WNS),
19             Amazon Device Messaging (ADM), and Baidu Cloud Push, phone
20             numbers, IMEI/ESN, serial numbers, instrument numbers), MAC
21             addresses, IP addresses, email addresses, and subscriber information;

22    (v)    Records of session times and durations, and the temporarily assigned
23             network addresses (such as Internet Protocol ("IP" addresses) associated
24             with those sessions along with time, type, machine (including MAC
25             addresses) cookie, city, region, country, device, and browser;

26    (w)    Facial recognition data;

27    (x)    Linked accounts;

28    (y)    Family members associated with the user of each Subject Account;

ATTACHMENT B
INFORMATION TO BE DISCLOSED    – 3 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    (z)    Work of the user of each Subject Account;

2    (aa)   Telephone or instrument numbers or identities (including MAC addresses);

3    (bb)   Other subscriber numbers or identities (including temporarily assigned

4           network addresses and registration IP addresses);

5    (cc)   User Contact Information – all user contact information input by the user

6           including name, birthdate, contact email address(es), other related email

7           addresses, address, city, state, zip code, all phone numbers, screen name(s),

8           and website information, to include basic subscriber information and

9           expanded subscriber information;

10   (dd)   Group Contact Information – a list of the user's currently registered groups;

11   (ee)   Location Information – all information pertaining to location data for the

12          Subject Accounts, including but not limited to geo-location data and all

13          other geo-tagging or geo-location related information;

14   (ff)   Device Information – all information pertaining to devices used to upload

15          photos, posts, messages, or updates, including but not limited to Apple

16          UDID, mobile phone number, mobile device ID numbers, and all other

17          information related to the devices;

18   (gg)   Poke Information – all information pertaining to "pokes" initiated by or

19          received by the Subject Accounts;

20   (hh)   Private Messages – all information pertaining to any and all private

21          messages to include content, call logs, and location information for the

22          Subject Accounts;

23   (ii)   Facebook Messenger – all information pertaining to any and all incoming

24          and outgoing Facebook messenger text strings and conversations for the

25          Subject Accounts; and

26   (jj)   All other account information including: any "about you" information, ads,

27          apps and websites, calls and messages, comments, events, following and

28          followers, friends, groups, likes and reactions, location history,

ATTACHMENT B
INFORMATION TO BE DISCLOSED          – 4 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    marketplace, messages, other activity, pages, payment history, photos and
2    videos, posts, profile information, saved items, search history, security and
3    login information, and "your places" information.

4  B.  All records and other information (not including the contents of communications)
5    relating to the Subject Accounts, including:

7    (a)   Records of user activity for each connection activity for each connection
8        made to or from the Subject Accounts, including log files; messaging logs;
9        the date, time, length, and method of connections; data transfer volume;
10       user names; and source and destination of Internet Protocol addresses;

11   (b)   Information about each communication sent or received by the Subject
12       Accounts, including the date and time of the communication, the method of
13       the communication (such as source and destination email addresses, IP
14       addresses, and telephone numbers); and

15   (c)   Records of any Facebook accounts that are linked to the Subject Accounts
16       by machine cookies (meaning all Facebook user IDs that logged into
17       Facebook by the same machine or device as each Subject Account).

19 **II.    Information to be seized by the government**

20 All information described above in Section I that relates to the ongoing fugitive
21 investigation involving Santiago Mederos, including, for each user ID identified on
22 Attachment A, information pertaining to the following matters:

23    (a) Any content including e-mails, messages, texts, photographs (including
24       metadata), videos (including metadata), visual images, documents,
25       spreadsheets, address lists, contact lists or communications of any type
26       which could be used to identify the user and or their location.

27    (b) Records relating to who created, used, or communicated with the user ID,
28       including records about their identities and whereabouts.

ATTACHMENT B
INFORMATION TO BE DISCLOSED          – 5 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

(c) All subscriber records associated with the Subject Accounts, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service including any credit card or bank account number.

(d) Any and all other log records, including IP address captures, associated with the Subject Accounts;

(e) Any records of communications between Facebook and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about any of the Subject Accounts. This is to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

ATTACHMENT B
INFORMATION TO BE DISCLOSED        – 6 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS**
**RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury

under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the

information contained in this declaration is true and correct.  I am employed by

Facebook, and my official title is _____.  I am a custodian

of records for Facebook.  I state that each of the records attached hereto is the original

record or a true duplicate of the original record in the custody of Facebook, and that I am

the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I

further state that:

a.      all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business

activity of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the

Federal Rules of Evidence.

_____        _____

Date                                        Signature

CERTIFICATION – 1
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800